```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

<u>C&S Wholesale Grocers, Inc.</u>

    v.                                    Civil No. 11-cv-127-LM

<u>Grocery Haulers, Inc., et al.</u>

## <u>O R D E R</u>

In this diversity action, C&S Wholesale Grocers, Inc. ("C&S") sues Grocery Haulers, Inc. ("GHI") seeking declaratory relief.  Before the court is GHI's motion to transfer venue of this lawsuit to the United States District Court for the Southern District of New York.  C&S objects.  The court heard oral argument on this motion on August 31, 2011.  For the reasons that follow, the court denies the motion (doc. no. 7).

**Factual Background**

Except where noted, the factual summary is drawn from C&S's complaint and GHI's Answer and Counterclaims.  GHI is a trucking company with a principal place of business in Avenel, New Jersey, that has for many years provided trucking and consulting services to C&S, a grocery wholesaler whose principal place of business is located in Keene, New Hampshire.  On July 5, 2001, the parties executed a contract (the "Trucking Agreement") that provided,

inter alia, that GHI would transport and provide consulting for C&S's wholesale business with grocery stores owned by Key Food Stores Co-operative, Inc. ("Key Food") and The Great Atlantic & Pacific Tea Company ("A&P").  Per its terms, the Trucking Agreement is governed by New York law.  Doc. no. 7-3, at 28.  At the time C&S and GHI entered into the Trucking Agreement, C&S's principal place of business was located in Brattleboro, Vermont.  Doc. no. 7-3, at 1.  C&S moved its corporate headquarters to New Hampshire in 2004.  Doc. no. 25 ¶ 4.

   Over the years, the Trucking Agreement was amended by C&S and GHI, and their business relationship appeared to flourish.  For example, in 2005, C&S significantly expanded its wholesale business with A&P.  At the same time, C&S and GHI agreed to amend the Trucking Agreement to modify the compensation calculus to reflect GHI's increased transportation services for C&S's additional A&P business.  In short, the parties agreed to change GHI's fee from an annual basis to a "per load" amount.  The amendment (referred to hereinafter as "the 2005 Amendment") became effective on July 1, 2005.

   To provide services under the Trucking Agreement, GHI operated two trucking terminals.  To service the A&P stores, GHI made deliveries from its trucking terminal in Avenel, New Jersey, and to service the Key Food stores, it made deliveries

2

from its terminal in the Bronx, New York.  Doc. no. 7-2, ¶¶ 9-11.

Prior to executing the Trucking Agreement, the parties had entered into a Labor Consulting Agreement dated January 1998 ("Labor Consulting Agreement").  Pursuant to the Labor Consulting Agreement, C&S agreed to pay GHI a fee of $10 million (over five years) in return for GHI's assistance with respect to the handling of certain collective bargaining agreements.  In 2005, the Labor Consulting Agreement expired, and according to C&S, the parties agreed, on an "oral and at-will" basis, that C&S would pay GHI an annual fee of $1 million fee in return for GHI's continued consulting services.  GHI attempted, according to C&S, to convert that oral agreement into a written amendment of the Labor Consulting Agreement to extend the $1 million annual fee to a ten-year term and to tie that fee to the A&P portion of the Trucking Agreement.  C&S asserts that it repudiated that proposal and refused to sign it.

Beginning in early 2011, the business relationship began to deteriorate.  By separate letters dated January 7 and February 17, 2011, C&S sent GHI notice of the termination of both the A&P portion of the Trucking Agreement and the agreement to pay the $1 million annual consulting fee.  In a letter to C&S dated March 11, 2011, counsel for GHI wrote:

> . . . Plainly, the parties are in disagreement over C&S's termination of the Trucking Agreement. Accordingly, pursuant to the terms of the Trucking Agreement, we plan to commence arbitration to resolve this dispute no later than March 16, 2011. Please advise me prior to that date whether C&S will consent to arbitrate . . . in New York City. . . .

Doc. no. 1-5.

C&S elected not to respond to that letter and, instead, on March 18, 2011, C&S filed this declaratory judgment action. In a letter to GHI dated May 5, 2011, C&S informed GHI that it was terminating the Trucking Agreement in its entirety on the basis of GHI's alleged diversion of goods with respect to certain Key Food stores. Shortly thereafter, on May 9, 2011, GHI filed an action in the United States District Court for the Southern District of New York, seeking a temporary restraining order and a preliminary injunction to prevent C&S from terminating the Key Foods portion of the Trucking Agreement. On May 10, 2011, the New York court granted GHI's temporary restraining order and, on May 11, 2011, set a discovery schedule. Doc. nos. 7-6 & 7-7.

On May 23, 2011, GHI filed its Answer and Counterclaims in this court, seeking declaratory relief, and damages for breach of contract, conversion and unjust enrichment related to C&S's termination of the Trucking Agreement. Contemporaneously with the filing of its Answer, GHI filed the instant motion to transfer venue to the Southern District of New York. On June 3,

4

2011, C&S filed its Answer and Counterclaim in the New York court.  Doc. no. 24-6.

In sum, therefore, there are two separate actions involving these parties and their disputes under the Trucking Agreement, one pending here and the other in New York.  In this court, the lawsuit concerns the portion of the Trucking Agreement that deals with the A&P stores; in New York, the lawsuit concerns the portion of the Trucking Agreement that deals with the Key Food stores.  At oral argument, GHI conceded that the lawsuits are distinct and deal with different provisions of the Trucking Agreement.

**Legal Discussion**

GHI moves, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the Southern District of New York.  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district where it might have been brought."  Authority to transfer a case under this statute "is committed to the court's broad discretion."  <u>Pure Distribs., Inc. v. Baker</u>, No. CIV. 99-412-M, 2000 WL 1499472, at *1 (D.N.H. May 10, 2000); <u>see also</u> <u>Huffington v. T.C. Grp., LLC</u>, 637 F.3d 18, 24 (1st Cir. 2011)

(describing 1404(a) as calling for a "broad-based balancing" test) (internal quotation marks omitted); Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (courts adjudicate motions for transfer "according to an individualized, case-by-case consideration of convenience and fairness") (internal quotation marks omitted).

> Although no single factor is dispositive, a court should consider: (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively.

Pure Distribs., 2000 WL 1499472, at *1 (internal quotations omitted). Additional factors include "the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation." Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) (citing Codex v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977)). While no single factor is dispositive, the "most important factor in deciding whether to transfer an action is the convenience of witnesses." Demers v. Pilkington N. Am., Inc., No. 10-cv-296-JL, 2010 WL 4683780, at *6 (D.N.H. Nov. 10, 2010) (quoting Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 440 (D.N.H. 1991)).

"The burden of justifying a transfer under § 1404(a) rests with the party seeking it, and 'there is a strong presumption in favor of plaintiff's choice of forum.'" Demers, 2010 WL 4683780, at *6 (quoting Coady v. Ashcroft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)). Courts generally assign more weight to a plaintiff's choice of forum where the plaintiff is a resident of that forum. See Demers, 2010 WL 4683780, at *6 ("strong presumption" applies where plaintiff resides in its choice of forum) (citing Sousa v. TD Banknorth Ins. Agency, Inc., 429 F. Supp. 2d 454, 457 (D.N.H. 2006)); see also DSM Research, B.V. v. Verenium Corp., 686 F. Supp. 2d 159, 161 (D. Mass. 2010).

GHI makes the following arguments in support of its transfer motion: (1) other than the fact that New Hampshire is C&S's domicile, there is no connection between the state of New Hampshire and the New Hampshire lawsuit; (2) the non-party witnesses, most of whom work for A&P, live and work in the New York metropolitan area where A&P is headquartered; (3) all of GHI's witnesses and documents related to the New Hampshire lawsuit are located at its headquarters in New Jersey, which is a mere 20 miles from New York but 230 miles from New Hampshire; (4) both lawsuits involve disputes under the Trucking Agreement, which contract is governed by New York law; and (5) the New York

7

lawsuit is moving at a faster pace, with a temporary order already issued and a discovery schedule in place.

As a threshold matter, the venue statute requires the court first to determine whether the case could have been filed in the district to which GHI seeks to transfer it. Neither party disputes that the case could have been filed in the Southern District of New York. Instead, their disagreement focuses on whether convenience and the interest of justice favor transfer. Although the case "might have been brought" in New York, none of the relevant factors weighs heavily in favor of transfer. The court analyzes these factors below.

1.  Plaintiff's Choice of Forum

As explained above, the burden is on GHI to persuade the court that the case should be transferred to New York, and "there is a strong presumption" in favor of C&S's chosen forum. Demers, 2010 WL 4683780, at *6. Where the plaintiff resides in her chosen forum, her choice of forum is given greater weight. See id; see also James Wm. Moore, Moore's Federal Practice (hereinafter "Moore's") § 111.13[1][c] (3d ed. 2010) ("plaintiff's choice is given added weight if the plaintiff resides in the chosen forum"). Even in a case where the "factual center of the case" lies elsewhere, plaintiff's choice

of forum is nonetheless still entitled to weight -- although the weight given to her choice of forum is reduced in such a case. Demers, 2010 WL 4683780, at *6.  GHI must therefore persuade the court that the balance of the relevant factors defeats the strong presumption given to C&S's choice of this forum.

2. Operative Events

GHI argues that the operative events underlying the New Hampshire lawsuit occurred in (or around) New York.  On this basis, GHI asserts that C&S's choice of forum is entitled to minimal weight.  "For purposes of the convenience analysis, pinpointing where the operative events took place . . . is not always an exact science."  Moore's § 111.13[1][d][ii].  As a general rule, "[t]he place where the operative events occurred often will be the place where the majority of significant witnesses and physical evidence is located . . . ."  Id. § 111.13[1][c][iii].

The New Hampshire lawsuit is, with the exception of GHI's counterclaim for conversion, a contract dispute that will involve the interpretation of the Trucking Agreement (specifically that portion dealing with the A&P business), and the terms of the parties' 2005 renegotiation of GHI's labor consulting fee.  The majority of significant witnesses in this

case will likely be the principals who negotiated the terms of these contracts.  The same is true of the location of the physical evidence, which, because this is a contract dispute, will likely be documentary in nature (e.g., email communications, letters, and other written correspondence concerning the parties' negotiations of the two contracts at issue).  As the principals of C&S reside in or around New Hampshire and those of GHI in or around New York, this factor is neutral.  Further, as each side will likely produce any records and documentary evidence from its own corporate headquarters, this factor is likewise neutral.  Based on the nature of the underlying dispute, it is difficult to conclude that the "operative events" of this lawsuit occurred in the New York area.

There is no question that the services GHI provided C&S under both of these contracts were provided exclusively in the New York metropolitan area.  However, the resolution of this dispute will hinge on the meaning of contractual terms. Although New York is unquestionably the epicenter of GHI's operations, the court is not persuaded that New York is the location where the "operative events" of this lawsuit occurred. C&S's choice of forum, which is also its place of corporate

residence, is therefore entitled to the "strong presumption" described in Demers, 2010 WL 4683780, at *6.

3. Convenience of Parties

GHI asserts it would be more convenient for the parties to litigate in New York, where its facility and witnesses are located. The plaintiff's documents and witnesses, however, are located in New Hampshire.

Although it would be more convenient for GHI to litigate in New York, transferring venue would merely shift the inconvenience to C&S. This factor is neutral and tips the scales in neither direction.

4. Convenience of Witnesses

Convenience of the witnesses is considered the "most important factor" in deciding whether to transfer an action. Demers, 2010 WL 4683780, at *6. In weighing this factor, courts are generally less concerned with the location of party witnesses and their employees than with the location of "non-party witnesses," particularly those who can be characterized as "unwilling non-party witnesses." Moore's, supra, § 111.13[1][f][iii]. The party relying on the potential unavailability of "non-party witnesses," should provide the court with specific information as to their identity. See

Moore's, supra § 111.13[1][f][iii] ("Therefore, the party relying on the unavailability of the non-party witnesses in one of the respective forums should provide the court with specific information as to their unwillingness to testify."); see also Demers, 2010 WL 4683780, *7 ("conclusory allegations of unnamed witnesses are insufficient to meet the movant's burden to transfer") (internal quotations omitted).

Here, according to GHI, there is not a single non-party witness who resides in New Hampshire.  C&S does not dispute this fact.  However, C&S argues that non-party witnesses will not be crucial to this court's resolution of this contract dispute.  GHI asserts that to the extent any non-party witnesses will be relevant to this lawsuit, such witnesses would be employees of A&P, which is located in the New York metropolitan area.  GHI has not, however, provided the court with any specific information with respect to these potential non-party witnesses, such as names, addresses, or the relevant topics on which any such witness would testify.  Moreover, it is not clear to the court that, to the extent GHI (or C&S) needs to produce the testimony of a non-party witness from the New York area, such witness would be unwilling to testify in New Hampshire.

In short, this factor minimally favors transfer to New York, and is not so weighty that it overcomes the "strong presumption" accorded C&S's chosen forum.

5.  The Order in Which Jurisdiction Was Obtained

Here, while New Hampshire obtained jurisdiction over this lawsuit before GHI filed its lawsuit in New York, the court gives this no weight in the analysis. The "first-to-file" rule bears relevance only "[w]here identical actions are proceeding concurrently in two federal courts . . . ." Coady, 223 F.3d at 11; see also World Energy Alternatives, LLC v. Settlemyre Indus., Inc., 671 F. Supp. 2d 215, 218 (D. Mass. 2009) ("[w]here identical actions are proceeding concurrently in two federal courts, the first filed action is generally preferred, even if it is a request for a declaratory judgment") (emphasis in the original). These two lawsuits are not identical. Therefore, the fact that New Hampshire obtained jurisdiction before New York is of no relevance. Further, the evidence reveals that shortly before C&S filed its lawsuit in New Hampshire, GHI communicated to C&S its intention to arbitrate the disputes under the Trucking Agreement in New York. Under these circumstances, C&S should not benefit from its having defeated GHI in a race to the courthouse.

13

6. Considerations of Efficiency and Judicial Economy

This factor weighs in favor of transfer because the parties have engaged in discovery in New York but have not yet even made initial disclosures here. There is undoubtedly going to be some amount of overlapping, and perhaps redundant, discovery between the New York and New Hampshire cases. Further, the Trucking Agreement is governed by New York law. As a federal court sitting in diversity in New York is likely more familiar with New York law, the New York court is better suited to decide the issues underlying the Trucking Agreement. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 34 (1988) (Kennedy, J., concurring) (citing 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, §§ 3848-3849, 3851, 3853-3854 (2d ed. 1986); Van Dusen v. Barrack, 376 U.S. 612, 643 (1964); Jackson Nat'l Life Ins. Co. v. Economou, 557 F. Supp. 2d 216, 223-24 (D.N.H. 2008). However, the question of what state's law applies to the 2005 renegotiation of the labor consulting fee is not as clear.

In an ideal world, the goals of efficiency and judicial economy would be best served were these two cases tried in one courthouse. However, GHI has not persuaded the court that, taking into account all the circumstances present here, these

goals should override C&S's choice of forum where C&S also resides in this forum.

7. <u>The Interest of Justice</u>

Having weighed the convenience factors, the court concludes that GHI has not met its burden of proving that the interest of justice favor transferring of this case to New York. Because C&S's choice of forum weighs strongly against transfer and the other factors do not outweigh that presumption, the Court will not transfer venue.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

September 28, 2011

cc:  William R. Fried, Esq.
     Benjamin L. Hincks, Esq.
     Kerry K Jardine, Esq.
     Gordon J. MacDonald, Esq.
     Arnold Rosenblatt, Esq.
     Laurence A. Schoen, Esq.
     Stephen B. Selbst, Esq.
     Michael J. Ticcioni, Esq.